(Slip Opinion)     OCTOBER TERM, 2010     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ERICA P. JOHN FUND, INC., fka ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, INC. *v.* HALLIBURTON CO. ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 09–1403.   Argued April 25, 2011—Decided June 6, 2011

Petitioner Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative securities fraud class action filed against Halliburton Co. and one of its executives (collectively Halliburton).  EPJ Fund alleges that Halliburton made various misrepresentations designed to inflate the company's stock price, in violation of §10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5.  EPJ Fund also contends that Halliburton later made a number of corrective disclosures that caused the stock price to drop and, consequently, investors to lose money.  EPJ Fund sought to have its proposed class certified pursuant to Federal Rule of Civil Procedure 23.  The District Court found that the suit could proceed as a class action under Rule 23(b)(3), but for one problem: Fifth Circuit precedent required securities fraud plaintiffs to prove "loss causation"— *i.e.*, that the defendant's deceptive conduct caused the investors' claimed economic loss—in order to obtain class certification.  The District Court concluded that EPJ Fund had failed to satisfy that requirement.  The Court of Appeals agreed and affirmed the denial of class certification.

*Held:* Securities fraud plaintiffs need not prove loss causation in order to obtain class certification.  Pp. 3–10.

(a) In order to certify a class under Rule 23(b)(3), a court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Considering whether "ques-

tions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action. The elements of a private securities fraud claim based on violations of §10(b) and Rule 10b–5 are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U. S. ___, ___.

Whether common questions of law or fact predominate in such an action often turns on the element of reliance. The traditional way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation. The Court recognized in *Basic Inc.* v. *Levinson*, 485 U. S. 224, however, that "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would" prevent such plaintiffs "from proceeding with a class action, since individual issues" would "overwhelm[ ] the common ones." *Id.*, at 242. The Court in *Basic* sought to alleviate that concern by permitting plaintiffs to invoke a rebuttable presumption of reliance based on what is known as the "fraud-on-the-market" theory. According to that theory, "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.*, at 246. Under that doctrine, the Court explained, one can assume an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market." *Id.*, at 247. The Court also made clear that the presumption could be rebutted by appropriate evidence. Pp. 3–5.

(b) It is undisputed that securities fraud plaintiffs must prove certain things in order to invoke *Basic*'s rebuttable presumption of reliance. According to the Court of Appeals, EPJ Fund had to prove the separate element of loss causation in order to trigger the presumption. That requirement is not justified by *Basic* or its logic. This Court has never mentioned loss causation as a precondition for invoking *Basic*'s rebuttable presumption. Loss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock.

The Court has referred to the element of reliance in a private Rule 10b–5 action as "transaction causation," not loss causation. *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U. S. 336, 341–342. Consistent with that description, when considering whether a plaintiff has relied on a misrepresentation, the Court has typically focused on facts surrounding the investor's decision to engage in the transaction. Loss

causation, by contrast, requires a plaintiff to show that the misrepresentation caused a subsequent economic loss. That has nothing to do with whether an investor relied on that misrepresentation in the first place, either directly or through the fraud-on-the-market theory. The Court of Appeals' rule contravenes *Basic*'s fundamental premise— that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction. Pp. 5–8.

(c) Halliburton concedes that securities fraud plaintiffs should not be required to prove loss causation in order to invoke *Basic*'s presumption of reliance. Halliburton nonetheless defends the judgment below on the ground that the Court of Appeals did not actually require EPJ Fund to prove "loss causation" as the Court has used that term. According to Halliburton, "loss causation" was shorthand for a different analysis. The lower court's actual inquiry, Halliburton insists, was whether EPJ Fund had demonstrated "price impact"—that is, whether the alleged misrepresentations affected the market price in the first place.

The Court does not accept EPJ Fund's interpretation of the Court of Appeals' opinion. Loss causation is a familiar and distinct concept in securities law; it is not price impact. Whatever Halliburton thinks the Court of Appeals meant to say, what it said was loss causation. The Court takes the Court of Appeals at its word. Based on those words, the decision below cannot stand. Pp. 8–9.

597 F. 3d 330, vacated and remanded.

ROBERTS, C. J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–1403

_____

## ERICA P. JOHN FUND, INC., FKA ARCHDIOCESE OF MILWAUKEE SUPPORTING FUND, INC., PETITIONER *v.* HALLIBURTON CO. ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[June 6, 2011]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

To prevail on the merits in a private securities fraud action, investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss. This requirement is commonly referred to as "loss causation." The question presented in this case is whether securities fraud plaintiffs must also prove loss causation in order to obtain class certification. We hold that they need not.

I

Petitioner Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative securities fraud class action filed against Halliburton Co. and one of its executives (collectively Halliburton). The suit was brought on behalf of all investors who purchased Halliburton common stock between June 3, 1999, and December 7, 2001.

EPJ Fund alleges that Halliburton made various misrepresentations designed to inflate its stock price, in violation of §10(b) of the Securities Exchange Act of 1934 and

Securities and Exchange Commission Rule 10b–5. See 48 Stat. 891, 15 U. S. C. §78j(b); 17 CFR §240.10b–5 (2010). The complaint asserts that Halliburton deliberately made false statements about (1) the scope of its potential liability in asbestos litigation, (2) its expected revenue from certain construction contracts, and (3) the benefits of its merger with another company. EPJ Fund contends that Halliburton later made a number of corrective disclosures that caused its stock price to drop and, consequently, investors to lose money.

After defeating a motion to dismiss, EPJ Fund sought to have its proposed class certified pursuant to Federal Rule of Civil Procedure 23. The parties agreed, and the District Court held, that EPJ Fund satisfied the general requirements for class actions set out in Rule 23(a): The class was sufficiently numerous, there were common questions of law or fact, the claims of the representative parties were typical, and the representative parties would fairly and adequately protect the interests of the class. See App. to Pet. for Cert. 3a.

The District Court also found that the action could proceed as a class action under Rule 23(b)(3), but for one problem: Circuit precedent required securities fraud plaintiffs to prove "loss causation" in order to obtain class certification. *Id.*, at 4a, and n. 2 (citing *Oscar Private Equity Invs.* v. *Allegiance Telecom, Inc.*, 487 F. 3d 261, 269 (CA5 2007)). As the District Court explained, loss causation is the "'causal connection between the material misrepresentation and the [economic] loss'" suffered by investors. App. to Pet. for Cert. 5a, and n. 3 (quoting *Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U. S. 336, 342 (2005)). After reviewing the alleged misrepresentations and corrective disclosures, the District Court concluded that it could not certify the class in this case because EPJ Fund had "failed to establish loss causation with respect to any" of its claims. App. to Pet. for Cert. 54a. The court made clear,

however, that absent "this stringent loss causation re-quirement," it would have granted the Fund's certification request. *Ibid.*

The Court of Appeals affirmed the denial of class certifi-cation. See 597 F. 3d 330 (CA5 2010). It confirmed that, "[i]n order to obtain class certification on its claims, [EPJ Fund] was required to prove loss causation, i.e., that the corrected truth of the former falsehoods actually caused the stock price to fall and resulted in the losses." *Id.*, at 334. Like the District Court, the Court of Appeals con-cluded that EPJ Fund had failed to meet the "require-ments for proving loss causation at the class certification stage." *Id.*, at 344.

We granted the Fund's petition for certiorari, 562 U. S. \_\_\_ (2011), to resolve a conflict among the Circuits as to whether securities fraud plaintiffs must prove loss causa-tion in order to obtain class certification. Compare 597 F. 3d, at 334 (case below), with *In re Salomon Analyst Metromedia Litigation*, 544 F. 3d 474, 483 (CA2 2008) (not requiring investors to prove loss causation at class certifi-cation stage); *Schleicher* v. *Wendt*, 618 F. 3d 679, 687 (CA7 2010) (same); *In re DVI, Inc. Securities Litigation*, No. 08–8033 etc., 2011 WL 1125926, *7 (CA3, Mar. 29, 2011) (same; decided after certiorari was granted).

II

EPJ Fund contends that the Court of Appeals erred by requiring proof of loss causation for class certification. We agree.

A

As noted, the sole dispute here is whether EPJ Fund satisfied the prerequisites of Rule 23(b)(3). In order to certify a class under that Rule, a court must find "that the questions of law or fact common to class members pre-dominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. Rule Civ. Proc. 23(b)(3). Considering whether "questions of law or fact common to class members predominate" begins, of course, with the elements of the underlying cause of action. The elements of a private securities fraud claim based on violations of §10(b) and Rule 10b–5 are: "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 9) (quoting *Stoneridge Investment Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U. S. 148, 157 (2008)).

Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance. The courts below determined that EPJ Fund had to prove the separate element of loss causation in order to establish that reliance was capable of resolution on a common, classwide basis.

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the §10(b) private cause of action." *Stoneridge*, *supra*, at 159. This is because proof of reliance ensures that there is a proper "connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc.* v. *Levinson*, 485 U. S. 224, 243 (1988). The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—*e.g.*, purchasing common stock—based on that specific misrepresentation. In that situation, the plaintiff plainly would have relied on the company's deceptive conduct. A plaintiff unaware of the relevant statement, on the other hand, could not establish reliance on

that basis.

We recognized in *Basic*, however, that limiting proof of reliance in such a way "would place an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff who has traded on an impersonal market." *Id.*, at 245. We also observed that "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would" prevent such plaintiffs "from proceeding with a class action, since individual issues" would "over-whelm[ ] the common ones." *Id.*, at 242.

The Court in *Basic* sought to alleviate those related concerns by permitting plaintiffs to invoke a rebuttable presumption of reliance based on what is known as the "fraud-on-the-market" theory. According to that theory, "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.*, at 246. Because the market "transmits information to the investor in the processed form of a market price," we can assume, the Court explained, that an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market." *Id.*, at 244, 247 (internal quotation marks omitted); see also *Stoneridge*, *supra*, at 159; *Dura Pharmaceuticals*, 544 U. S., at 341–342. The Court also made clear that the presumption was just that, and could be rebutted by appropriate evidence. See *Basic*, *supra*, at 248.

## B

It is undisputed that securities fraud plaintiffs must prove certain things in order to invoke *Basic*'s rebuttable presumption of reliance. It is common ground, for example, that plaintiffs must demonstrate that the alleged misrepresentations were publicly known (else how would the market take them into account?), that the stock traded in an efficient market, and that the relevant transaction

took place "between the time the misrepresentations were made and the time the truth was revealed." *Basic*, 485 U. S., at 248, n. 27; *id.*, at 241–247; see also *Stoneridge*, *supra*, at 159.

According to the Court of Appeals, EPJ Fund also had to establish loss causation at the certification stage to "trigger the fraud-on-the-market presumption." 597 F. 3d, at 335 (internal quotation marks omitted); see *ibid.* (EPJ Fund must "establish a causal link between the alleged falsehoods and its losses in order to invoke the fraud-on-the-market presumption"). The court determined that, in order to invoke a rebuttable presumption of reliance, EPJ Fund needed to prove that the decline in Halliburton's stock was "because of the correction to a prior misleading statement" and "that the subsequent loss could not otherwise be explained by some additional factors revealed then to the market." *Id.*, at 336 (emphasis deleted). This is the loss causation requirement as we have described it. See *Dura Pharmaceuticals*, *supra*, at 342; see also 15 U. S. C. §78u–4(b)(4).

The Court of Appeals' requirement is not justified by *Basic* or its logic. To begin, we have never before mentioned loss causation as a precondition for invoking *Basic*'s rebuttable presumption of reliance. The term "loss causation" does not even appear in our *Basic* opinion. And for good reason: Loss causation addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock.

We have referred to the element of reliance in a private Rule 10b–5 action as "transaction causation," not loss causation. *Dura Pharmaceuticals, supra*, at 341–342 (citing *Basic*, *supra*, at 248–249). Consistent with that description, when considering whether a plaintiff has relied on a misrepresentation, we have typically focused on facts surrounding the investor's decision to engage in

1 Cite as: 563 U. S. ____ (2011)

the transaction. See *Dura Pharmaceuticals*, *supra*, at 342. Under *Basic*'s fraud-on-the-market doctrine, an investor presumptively relies on a defendant's misrepresentation if that "information is reflected in [the] market price" of the stock at the time of the relevant transaction. See *Basic*, 485 U. S., at 247.

Loss causation, by contrast, requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss. As we made clear in *Dura Pharmaceuticals*, the fact that a stock's "price on the date of purchase was inflated because of [a] misrepresentation" does not necessarily mean that the misstatement is the cause of a later decline in value. 544 U. S., at 342 (emphasis deleted; internal quotation marks omitted). We observed that the drop could instead be the result of other intervening causes, such as "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Id.*, at 342–343. If one of those factors were responsible for the loss or part of it, a plaintiff would not be able to prove loss causation to that extent. This is true even if the investor purchased the stock at a distorted price, and thereby presumptively relied on the misrepresentation reflected in that price.

According to the Court of Appeals, however, an inability to prove loss causation would prevent a plaintiff from invoking the rebuttable presumption of reliance. Such a rule contravenes *Basic*'s fundamental premise—that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction. The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory. Loss causation has no logical connection to the

facts necessary to establish the efficient market predicate to the fraud-on-the-market theory.

The Court of Appeals erred by requiring EPJ Fund to show loss causation as a condition of obtaining class certification.

C

Halliburton concedes that securities fraud plaintiffs should not be required to prove loss causation in order to invoke *Basic*'s presumption of reliance or otherwise achieve class certification. See Tr. of Oral Arg. 26–29. Halliburton nonetheless defends the judgment below on the ground that the Court of Appeals did not actually require plaintiffs to prove "loss causation" as we have used that term. See *id.*, at 27 ("it's not loss causation as this Court knows it in *Dura*"). According to Halliburton, "loss causation" was merely "shorthand" for a different analysis. Brief for Respondents 18. The lower court's actual inquiry, Halliburton insists, was whether EPJ Fund had demonstrated "price impact"—that is, whether the alleged misrepresentations affected the market price in the first place. See, *e.g.*, *id.*, at 16–19, 24–27, 50–51; see also Tr. of Oral Arg. 27 (stating that the Court of Appeals' "test is simply price impact" and that EPJ Fund's "only burden under the Fifth Circuit case law was to show price impact").*

"Price impact" simply refers to the effect of a misrepresentation on a stock price. Halliburton's theory is that if a

─────────

*Halliburton further concedes that, even if its conception of what the Court of Appeals meant by "loss causation" is correct, the Court of Appeals erred by placing the initial burden on EPJ Fund. See Tr. of Oral Arg. 29 ("We agree . . . that the Fifth Circuit put the initial burden of production on the plaintiff, and that's contrary to *Basic*"). According to Halliburton, a plaintiff must prove price impact only after *Basic*'s presumption has been successfully rebutted by the defendant. Tr. of Oral Arg. 28, 38–40. We express no views on the merits of such a framework.

misrepresentation does not affect market price, an investor cannot be said to have relied on the misrepresentation merely because he purchased stock at that price. If the price is unaffected by the fraud, the price does not reflect the fraud.

We do not accept Halliburton's wishful interpretation of the Court of Appeals' opinion. As we have explained, loss causation is a familiar and distinct concept in securities law; it is not price impact. While the opinion below may include some language consistent with a "price impact" approach, see, *e.g.*, 597 F. 3d, at 336, we simply cannot ignore the Court of Appeals' repeated and explicit references to "loss causation," see *id.*, at 334 (three times), 334 n. 2, 335, 335 n. 10 (twice), 335 n. 11, 336, 336 n. 19, 336 n. 20, 337, 338, 341 (twice), 341 n. 46, 342 n. 47, 343, 344 (three times).

Whatever Halliburton thinks the Court of Appeals meant to say, what it said was loss causation: "[EPJ Fund] was required to prove loss causation, i.e., that the corrected truth of the former falsehoods actually caused the stock price to fall and resulted in the losses." 597 F. 3d, at 334; see *id.*, at 335 ("we require plaintiffs to establish loss causation in order to trigger the fraud-on-the-market presumption" (internal quotation marks omitted)). We take the Court of Appeals at its word. Based on those words, the decision below cannot stand.

*　　*　　*

Because we conclude the Court of Appeals erred by requiring EPJ Fund to prove loss causation at the certification stage, we need not, and do not, address any other question about *Basic*, its presumption, or how and when it may be rebutted. To the extent Halliburton has preserved any further arguments against class certification, they may be addressed in the first instance by the Court of Appeals on remand.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*