Justice Thomas,
with whom Justice Kennedy joins, and with whom Justice Scalia joins except for Part I-B, dissenting.
I
The Court today allows plaintiffs to obtain certification of securities-fraud class actions without proof that common questions predominate over individualized questions of reliance, in contravention of Federal Rule of Civil Procedure 23(b)(3). The Court does so by all but eliminating materiality as one of the predicates of the fraud-on-the-market theory, which serves as an alternative mode of establishing reliance. See Basic Inc. v. Levinson, 485 U. S. 224, 241-250 (1988). Without demonstrating materiality at certification, plaintiffs cannot establish Basic’s fraud-on-the-market presumption. Without proof of fraud on the market, plaintiffs cannot show that otherwise individualized questions of reliance will predominate, as required by Rule 23(b)(3). And without satisfying Rule 23(b)(3), class certification is improper. Fraud on the market is thus a condition precedent to class certification, without which individualized questions of reliance will defeat certification.
The Court’s opinion depends on the following assumption: Plaintiffs will either (1) establish materiality at the merits stage, in which case class certification was proper because reliance turned out to be a common question, or (2) fail to *487 establish materiality, in which case the claim would fail on the merits, notwithstanding the fact that the class should not have been certified in the first place, because reliance was never a common question. The failure to establish materiality retrospectively confirms that fraud on the market was never established, that questions regarding the element of reliance were not common under Rule 23(b)(3), and, by extension, that certification was never proper. Plaintiffs cannot be excused of their Rule 23 burden to show at certification that questions of reliance are common merely because they might lose later on the merits element of materiality. Because a securities-fraud plaintiff invoking Basic’s fraud-on-the-market presumption to satisfy Rule 23(b)(3) should be required to prove each of the predicates of that theory at certification in order to demonstrate that questions of reliance are common to the class, I respectfully dissent.
A
We begin with § 10 of the Securities Exchange Act of 1934, 15 U. S. C. § 78j (2006 ed. and Supp. V).[1] We “have implied a private cause of action from the text and purposes of § 10(b)” and Securities and Exchange Commission Rule lob-5, 17 CFR § 240.10b-5 (2011).[2] Matrixx Initiatives, Inc. v. *488 Siracusano, 563 U. S. 27, 37 (2011). See also Superintendent of Ins. of N Y. v. Bankers Life & Casualty Co., 404 U. S. 6, 13, n. 9 (1971) (“It is now established that a private right of action is implied under § 10(b)”). The elements of an implied § 10(b) cause of action for securities fraud are “ ‘(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.’” Matrixx, swpra, at 37-38 (quoting Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U. S. 148, 157 (2008)). This case concerns the reliance element of the § 10(b) claim and its interaction with Rule 23(b)(3).
To prove reliance, a plaintiff, whether proceeding individually or as a class member, must show that his stock transaction was caused by the specific alleged misstatement. “[P]roof of reliance ensures that there is a proper ‘connection between a defendant’s misrepresentation and a plaintiff’s injury.’” Erica P. John Fund, Inc. v. Halliburton Co., 563 U. S. 804, 810 (2011) (quoting Basic, supra, at 243).[3] To satisfy this element, a plaintiff traditionally was required to “sho[w] that he was aware of a company’s statement and engaged in a relevant transaction . . . based on that specific misrepresentation.” Erica P. John Fund, supra, at *489 810 (emphasis added). In the face-to-face fraud cases from which securities claims historically arose, see, e. g., Dura Pharmaceuticals, Inc. v. Broudo, 544 U. S. 336, 343-344 (2005) (discussing common-law roots of securities-fraud actions), this requirement was easily met by showing that the seller made statements directly to the purchaser and that the purchaser bought stock in reliance on those statements. However, in a modern securities market many, if not most, individuals who purchase stock from third parties on an impersonal exchange will be unaware of statements made by the issuer of those securities. As a result, such purchaser-plaintiffs are unable to meet the traditional reliance requirement because they cannot establish that they “engaged in a relevant transaction . . . based on [a] specific misrepresentation.” Erica P. John Fund, supra, at 810.
This concern was the driving force behind the development of the fraud-on-the-market theory adopted in Basic. Because individuals trading stock on an impersonal market often cannot show reliance even for purposes of an individual securities-fraud action, Basic permitted “plaintiffs to invoke a rebuttable presumption of reliance.”. Erica P. John Fund, supra, at 811.[4] Basic presumes that “ fin an open and devel *490 oped securities market, the price of a company’s stock is determined by the available material information regarding the company and its business.’” 485 U. S., at 241 (quoting Peil v. Speiser, 806 F. 2d 1154, 1160-1161 (CA3 1986); emphasis added).[5] " 'Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.’” 485 U. S., at 241-242. As a result, “[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price,” and “an investor’s reliance on any public material misrepresentations” may therefore “be presumed for purposes of a Rule 10b-5 action.” Id., at 247 (emphasis added).
If a plaintiff opts to show reliance through fraud on the market, Basic is clear that the plaintiff must show the following predicates in order to prevail: (1) an efficient market, (2) a public statement, (8) that the stock was traded after the statement was made but before the truth was revealed, and (4) the materiality of the statement. Id., at 248, n. 27.[6] *491 Both the Court and respondent agree that materiality is a necessary component of fraud on the market. See, e. g., ante, at 467 (materiality is “indisputably” “an essential predicate of the fraud-on-the-market theory”); Brief for Respondent 29 (“If the statement is not materially false, then no one in the class can establish reliance via the integrity of the market”). The materiality of a specific statement' is, therefore, essential to the fraud-on-the-market presumption, which in turn enables a plaintiff to prove reliance.
B
Basic’s fraud-on-the-market presumption is highly significant because it makes securities-fraud class actions possible by converting the inherently individual reliance inquiry into a question common to the class, which is necessary to satisfy the dictates of Rule 23(b)(3).[7] Rule 23(b)(3) requires the party seeking certification to prove that “questions of law or fact common to class members predominate over any questions affecting only individual members.” A plaintiff seeking class certification is not required to prove the elements of his claim at the certification stage, but he must show that the elements of the claim are susceptible to class-wide proof. See, e. g., Wal-Mart Stores, Inc. v. Dukes, 564 *492 U. S. 338, 351, n. 6 (2011) (“[Plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market,” an element of the fraud-on-the-market theory (emphasis added)). Without that proof, there is no justification for certifying a class because there is no “ 'capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.’ ” Id., at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97, 132 (2009)).
If plaintiffs fail to show that reliance is a common question at the time of certification, certification is improper. For if reliance is not a common question, each plaintiff would be required to prove that he in fact relied on a misstatement, a showing which is simply not susceptible to classwide proof. Individuals make stock transactions for divergent, even idiosyncratic, reasons. As the leading pre-Basic fraud-on-the-market case recognized, “[a] purchaser on the stock exchanges may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings ratio, or some other factor.” Blackie v. Barrack, 524 F. 2d 891, 907 (CA9 1975). The inquiry’s inherently individualized nature renders it impossible to generate the common answers necessary for certification under Rule 23(b)(3). See Basic, 485 U. S., at 242 (“Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones”).
The Court’s solution in Basic was to allow putative class members to prove reliance through the fraud-on-the-market presumption. Id., at 241-250. As the Court today recognizes, failure to establish fraud on the market “leaves open the prospect of individualized proof of reliance.” Ante, at 474. Notably, the Court and the Ninth Circuit both acknowledge that in order to obtain the benefit of the presumption, *493 plaintiffs must establish two of the fraud-on-the-market predicates at class certification: (1) that the market was generally efficient, and (2) that the alleged misstatement was public. See ante, at 473 (acknowledging “that market efficiency and the public nature of the alleged misrepresentations must be proved before a securities-fraud class action can be certified”); 660 F. 3d 1170, 1175 (CA9 2011) (same). See also Erica P. John Fund, 563 U. S., at 811 (“It is undisputed that securities fraud plaintiffs must prove,” at certification, inter alia, “that the alleged misrepresentations were publicly known ... [and] that the stock traded in an efficient market”). The Court is correct insofar as its statements recognize that fraud on the market is a condition precedent to showing that there are common questions of reliance at the time of class certification.
Nevertheless, the Court asserts that materiality—by its own admission an essential predicate to invoking fraud on the market—need not be established at certification because it will ultimately be proved at the merits stage. Ante, at 473-474. This assertion is an express admission that parties will not know at certification whether reliance is an individual or common question.
To support its position, the Court transforms the predicate certification inquiry into a novel either-or inquiry occurring much later on the merits. According to the Court, either (1) plaintiffs will prove materiality on the merits, thus demonstrating ex post that common questions predominated at certification, or (2) they will fail to prove materiality, at which point we learn ex post that certification was inappropriate because reliance was not, in fact, a common question. In the Court’s second scenario, fraud on the market was never established, reliance for each class member was inherently individualized, and Rule 23(b)(3) in fact should have barred certification long ago.[8] The Court suggests that the prob *494 lem created by the second scenario is excusable because the plaintiffs will lose anyway on alternative merits grounds, and the case will be over. See ante, at 474 (“[F]ailure of proof on the issue of materiality [at the merits stage] not only precludes a plaintiff from invoking the fraud-on-the-market presumption of classwide reliance; it also establishes as a matter of law that the plaintiff cannot prevail on the merits of her Rule 10b-5 claim”). But nothing in logic or precedent justifies ignoring at certification whether reliance is susceptible to Rule 23(b)(3) classwide proof simply because one predicate of reliance—materiality—will be resolved, if at all, much later in the litigation on an independent merits element.
It is the Court, not Amgen, that “would have us put the cart before the horse,” ante, at 460, by jumping chronologically to the § 10(b) merits element of materiality. But Rule 23, as well as common sense, requires class certification issues to be addressed first. See Rule 23(c)(1)(A) (“At an early practicable time after a person sues or is sued . . . the court must determine by order whether to certify the action as a class *495 action”)- A plaintiff who cannot prove materiality does not simply have a claim that is “ ‘dead on arrival’ ” at the merits, ante, at 474 (quoting 660 F. 3d, at 1175); he has a class that should never have arrived at the merits at all because it failed Rule 23(b)(3) certification from the outset. Without materiality, there is no fraud-on-the-market presumption, questions of reliance remain individualized, and Rule 23(b)(3) certification is impossible. And the fact that evidence of materiality goes to both fraud on the market at certification and an independent merits element is no issue; Wal-Mart expressly held that a court at certification may inquire into questions that also have later relevance on the merits. See 564 U. S., at 350-352. The Court reverses that inquiry, effectively saying that certification may be put off until later because an adverse merits determination will retroactively wipe out the entire class. However, a plaintiff who cannot prove materiality cannot prove fraud on the market and, thus, cannot demonstrate that the question of reliance is susceptible of a classwide answer.
The fact that a statement may prove to be material at the merits stage does not justify conflating the doctrinally independent (and distinct) elements of materiality and reliance.[9] The Court’s error occurs when, instead of asking *496 whether the element of reliance is susceptible to classwide proof, the Court focuses on whether materiality is susceptible to classwide proof. Ante, at 467 (“[T]he pivotal inquiry is whether proof of materiality is needed to ensure that the questions of law or fact common to the class will ‘predominate’ ”). The result is that the Court effectively equates § 10(b) materiality with fraud-on-the-market materiality and elides reliance as a § 10(b) element. But a plaintiff seeking certification under Rule 28 bears the burden of proof with regard to all the elements of a § 10(b) claim, which includes materiality and reliance. As Wal-Mart explained, “[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.” 564 U. S., at 350. If the elements of fraud on the market are not proved at certification, a plaintiff has failed to carry his burden of establishing that questions of individualized reliance will not predominate, without which the plaintiff class cannot obtain certification. Cf. id., at 352 (holding in Rule 23(a)(2) context that “[wjithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members’ claims for relief will produce a common answer”). It is only by establishing all of the elements of the fraud-on-the-market presumption that reliance can be proved on a classwide basis. Therefore, if a plaintiff wishes to use Basic’s presumption to prove that reliance is a common question, he must establish the entire presumption, including materiality, at the class certification stage.
Nor is it relevant, as respondent argues, that requiring plaintiffs to establish all predicates of fraud on the market at certification will make it more difficult to obtain certification. See Brief for Respondent 35-38. In Basic, four Justices of *497 a six-Justice Court created the fraud-on-the-market presumption from a combination of newly minted economic theories, 485 U. S., at 250-251, n. 1 (White, J., concurring in part and dissenting in part), and “considerations of fairness, public policy, and probability,” id., at 245 (majority opinion), to allow claims that otherwise would have been barred due to the plaintiffs’ inability to show reliance, id., at 242. Basic is a judicially invented doctrine based on an economic theory adopted to ease the burden on plaintiffs bringing claims under an implied cause of action. There is nothing untoward about requiring plaintiffs to take the steps that the Basic Court created in an effort to save otherwise inadequate claims.
II
The majority’s approach is, thus, doctrinally incorrect under Basic. Its shortcomings are further highlighted by the role that materiality played in the pre-Basic development of the fraud-on-the-market theory as a condition precedent to showing that there are common questions of reliance in the class-action context. Materiality, at the time of certification, has been a driving force behind the theory from the outset. This fact further supports the need to prove materiality at the time the fraud-on-the-market theory is invoked to show that questions of reliance can be answered on a class-wide basis.
A
Before Basic, two signposts marked the way for courts applying the fraud-on-the-market theory. Both demonstrate that the materiality of an alleged falsehood was not a mere afterthought but rather one of the primary reasons for allowing traditional proof of reliance to be brushed aside at certification. This fact weighs strongly in favor of the conclusion that materiality must be resolved at certification when the fraud-on-the-market presumption is invoked to show that reliance can be proved on a classwide basis.
*498 The first signpost was the Ninth Circuit’s 1975 opinion in Blackie, termed by one pre-Basic court the “seminal fraud on the market case.” Peil, 806 F. 2d, at 1163, n. 16. See also Basic, supra, at 251, n. 1 (opinion of White, J.) (“The earliest Court of Appeals case adopting this theory cited by the Court is Blackie v. Barrack, 524 F. 2d 891 (CA9 1975), cert. denied, 429 U. S. 816 (1976)”).
Blackie arose from a $90 million loss reported by audio equipment manufacturer Ampex Corp. in its 1972 annual report. 524 F. 2d, at 894.[10] Ampex’s independent auditors not only refused to certify the 1972 annual report but also withdrew certification of all 1971 financial statements “because of doubts that the loss reported for 1972 was in fact suffered in that year.” Ibid. In resultant class actions, the defendants argued that reliance stood in the way of class certification under Rule 23(b)(3) because it was not a common question.
The Ninth Circuit disagreed. Instead, it relieved plaintiffs from providing traditional proof of reliance, explaining that “causation is adequately established in the impersonal stock exchange context by proof of purchase and of the materiality of misrepresentations, without direct proof of reliance.” Id., at 906 (emphasis added). The court left no doubt that the materiality of the $90 million shortfall in Am-pex’s financial statements was central to its determination that reliance could be presumed. It asserted that “[m]a-teriality circumstantially establishes the reliance of some market traders and hence the inflation in the stock price— when the purchase is made[,] the causational chain between defendant’s conduct and plaintiff’s loss is sufficiently established to make out a prima facie case.” Ibid. Materiality was not merely an important factor that allowed reliance to *499 be presumed at certification; materiality was the factor. It demonstrated that the defendants had committed a fraud on the market, that all putative class plaintiffs had relied on it in purchasing stock, and, therefore, that questions of reliance would be susceptible to common answers.[11]
The second fraud-on-the-market signpost prior to Basic was a note in the Harvard Law Review, which described the nascent theory. See Note, The Fraud-on-the-Market Theory, 95 Harv. L. Rev. 1143 (1982) (hereinafter Harv. L. Rev. Note). The Sixth Circuit opinion reviewed in Basic termed the Note “[t]he clearest statement of the theory of presumption of reliance.” Levinson v. Basic Inc., 786 F. 2d 741, 750 (1986). Indeed, in the briefing for Basic itself, the plaintiffs, the United States, and plaintiffs’ amici cited the article repeatedly as an authoritative statement on the subject. See Brief for Respondents 43, n. 18,46, n. 20 (cited in Peil, supra, at 1160), Brief for Securities and Exchange Commission as Amicus Curiae 22, n. 25, 24, n. 30, 26, n. 32, and Brief for Joseph Harris et al. as Amici Curiae 4-5, n. 2, in Basic Inc. v. Levinson, O. T. 1987, No. 86-279.
Like Blackie, the Note also hinged the fraud-on-the-market presumption of reliance on proof of materiality. Harv. L. Rev. Note 1161 (“In developed markets, which are apparently efficient, reliance should be presumed from the materiality of the deception” (emphasis added)). Ultimately, in language that will be familiar to anyone who has *500 read Basic, the Note formulated a “pivotal assumption” underlying the fraud-on-the-market theory as the belief that
“market prices respond to information disseminated (or not disseminated) concerning the companies whose securities are traded. In such a setting—often described as an ‘efficient market’—the reliance of some traders upon a material deception influences market prices and thereby affects even traders who never read or hear of the deception.” Harv. L. Rev. Note 1154 (footnote omitted).
Again, the materiality of the alleged misstatement was a key component, without which the market could not be presumed to move. As a result, without materiality it is impossible to say that there has been a fraud on the market at all, and if that is not the case there is no reason to believe that the market price at which stock transactions occurred was affected by an alleged misstatement or, by extension, that any market participants relied on it. Materiality should thus be proved when the fraud-on-the-market presumption is invoked, or there is no commonality with respect to questions of reliance.
B
Nor did the importance of materiality diminish in the Sixth Circuit opinion reviewed in Basic... Rather, the court followed the path marked by the signposts -discussed above. It excused plaintiffs from offering traditional evidence of reliance, so long as “a defendant is shown to have made a material public misrepresentation that, if relied on directly, would fraudulently induce an individual to misjudge the value of the stock.” Levinson, 786 F. 2d, at 750 (emphasis added). The court’s analysis made clear that materiality should be demonstrated at the time the presumption was invoked: “In order to invoke the presumption of reliance based upon the fraud on the market, theory, a plaintiff must allege and prove .. . that the misrepresentations were material . . . .” Ibid, (citing Blackie, supra, at 906).
*501 c
Finally, the briefing before this Court in Basic itself built upon this framework and the foundational principle that materiality is an integral part of the theory. Critically, the Basic defendants argued that the plaintiffs could not establish fraud on the market at certification even if the theory were valid because the alleged misstatement was immaterial. They “contrasted] the likely market impact of disclosure of the [$90 million Blackie loss] . .. with the disclosure of the information which respondents contended] rendered Basic’s statements materially misleading.” See Brief for Petitioners in O. T. 1987, No. 86-279, p. 42. The Basic defendants concluded that “the differences between a company’s $90 million loss and a company’s sporadic contacts with a friendly suitor are substantial. . .. [T]he fraud on the market theory, if it has vitality, should not be applied in a case such as this.” Id., at 43.
In response, the plaintiffs in Basic did not argue that the defendants misunderstood the role of materiality in the fraud-on-the-market theory. They instead advanced a now-foreclosed interpretation of dicta from Eisen v. Carlisle & Jacquelin, 417 U. S. 156, 177 (1974):
“Petitioners’ final argument—that respondents will be unable to establish that Basic’s repeated false and misleading statements impacted the price of Basic stock over a fourteen month period—represents an effort to litigate the merits of this case on the motion for class certification. ... As this Court held in Eisen v. Carlisle & Jacquelin, 417 U. S. 156, 177 (1974): ‘We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.’ ” Brief for Respondents in O. T. 1987, No. 86-279, at 54.
The Court rejected this reading of Eisen two Terms ago, explaining that the very language the Basic plaintiffs quoted *502 was “sometimes mistakenly cited” as prohibiting inquiry into “the propriety of certification under Rules 23(a) and (b).” Wal-Mart Stores, Inc., 564 U. S., at 351, n. 6. That reading, the Court explained, “is the purest dictum and is contradicted by our other cases.” Ibid. The Basic defendants’ reply is consistent with Wal-Mart
“Putative class representatives, such as respondents, should not be permitted to invoke the fraud on the market theory while, at the same time, arguing that courts may not make any preliminary inquiry into the claimed impact on the market. See, e. g., Resp. Br., p. 54. By seeking the benefit of the presumption, respondents necessarily invite judicial scrutiny of the circumstances in which it is invoked.” Reply Brief for Petitioners in O. T. 1987, No. 86-279, p. 18.
Well said. The history of Basic is worth the volume of argument offered by the majority. Cf. New York Trust Co. v. Eisner, 256 U. S. 345, 349 (1921) (majority opinion of Holmes, J.). Materiality was central to the development, analysis, and adoption of the fraud-on-the-market theory both before Basic and in Basic itself. Materiality, therefore, must be demonstrated to prove fraud on the market, and until materiality of an alleged misstatement is shown there is no reason to believe that all market participants have relied equally on it. Otherwise individualized questions of reliance remain. This history confirms that materiality must be proved at the time that the theory is invoked—i. e., at certification.
Ill
I, thus, would reverse the judgment of the Ninth Circuit and hold that a plaintiff invoking the fraud-on-the-market presumption bears the burden to establish all the elements of fraud on the market at certification, including the materiality of the alleged misstatement.

 Section 10 states, in relevant part:
“It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
[[Image here]]
“(b) To use or employ, in. connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe ....”

 Rule 10b-5 states:
“It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
“(a) To employ any device, scheme, or artifice to defraud,
*488 “(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
“(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.”

 Courts have also “referred to the element of reliance ... as ‘transaction causation.’” Erica P. John Fund, 563 U. S., at 812 (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U. S. 336, 341-342 (2005), in turn citing Basic Inc. v. Levinson, 485 U. S. 224, 248-249 (1988)). This alternative phrasing recognizes that the reliance inquiry is directed at determining whether a particular piece of information caused an individual to enter into a given transaction.

 The Basic decision itself is questionable. Only four Justices joined the portion of the opinion adopting the fraud-on-the-market theory. Justice White, joined by Justice O’Connor, dissented from that section, emphasizing that “[cjonfusion and contradiction in court rulings are inevitable when traditional legal analysis is replaced with economic theorization by the federal courts” and that the Court is “not well equipped to embrace novel constructions of a statute based on contemporary microeconomic theory.” 485 U. S., at 252-253 (concurring in part and dissenting in part). Justice White’s concerns remain valid today, but the Court has not been asked to revisit Basic’s fraud-on-the-market presumption. I thus limit my dissent to demonstrating that the Court is not following Basic’s dictates.
Moreover, the Court acknowledges there is disagreement as to whether market efficiency is ‘““a binary, yes or no question,”’” or instead operates differently depending on the information at issue, see ante, at 470, n. 6 (quoting Brief for Petitioners 32, in turn quoting Langevoort, Basic at Twenty: Rethinking Fraud on the Market, 2009 Wis. L. Rev. 151,167).

 Basic “adopt[ed] the TSC Industries standard of materiality for the § 10(b) and Rule 10b-5 context.” 485 U. S., at 232. That standard indicates that “ ‘[a]n omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.’ ” Id., at 231 (quoting TSC Industries, Inc. v. Northway, Inc., 426 U. S. 438, 449 (1976); alteration in original). “[T]o fulfill the materiality requirement ‘there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the “total mix” of information made available.’” 485 U. S., at 231-232 (quoting TSC Industries, supra, at 449).

 The United States as amicus curiae invokes Rule 23(a)(3) to suggest that the third element, the timing of the relevant stock trades, is a “limit on the definition of the class.” Brief for United States 15, n. 2. But it is also necessary to establish the timing of the allegedly material, public misstatement made into an allegedly efficient market (as well as when the fraud ended due to entry of truth on the market) before the fraud-on-the-market theory can be evaluated under Rule 23(b)(3). Thus, the lower court opinion in Basic expressly identified “the time the misrepresentations were made and the time the truth was revealed” as part of fraud on the market. Levinson v. Basic Inc., 786 F. 2d 741, 750 (CA6 1986). The Basic Court cited the formulation approvingly, 485 U. S., at 248, n. 27, and recently in Erica P. John Fund, Inc. v. Halliburton Co., 563 U. S. 804 *491 (2011), the Court cited the same language as part of the “undisputed” elements a securities-fraud plaintiff must prove to invoke Basic. 563 U. S., at 811 (citing Basic, supra, at 248, n. 27). Unless the timing of the misrepresentation and truth is established at certification, there is no framework within which to determine whether fraud on the market renders reliance a common question. Thus, insofar as the majority recognizes that timing is a factor of the fraud-on-the-market theory, ante, at 472, n. 8, I agree. It would be incorrect to suggest that timing solely relates to Rules 23(a)(3) and (4). It is equally important to establish the timing range at certification for Rule 23(b)(3) reliance purposes. This fact undercuts the majority’s attempt to isolate materiality as the only factor of fraud on the market that need not be shown at certification to demonstrate that reliance is a common question.

 There is no dispute that respondent meets the prerequisites of Fed. Rule Civ. Proc. 23(a).

 The majority ignores this explanation of the fundamental flaw in its position, asserting that I never “explain how ... a plaintiff class’s failure *494 to prove an essential element of its claim for relief will result in individual questions predominating over common ones.” Ante, at 469. But a plaintiff, who is excused from his burden of showing at certification that reliance is a common question, fails to demonstrate that common questions predominate over the individualized questions of reliance that are inherent in a securities-fraud claim. A plaintiff must carry this burden at certification for certification to be proper. The majority does not respond to the inherent timing problem in its position. It does not explain how ignoring questions of reliance—that undeniably will be individualized in some cases—at certification is justified by the fact that those questions will be resolved months or years later on the merits in a way that indicates reliance was indeed an individualized question all along. Far from obeying the dictates of Rule 23(b)(3) as it claims, ante, at 469-470, the majority unjustifiably puts off a critical part of the Rule 23(b)(3) inquiry until the merits. The only way the majority can purport to follow Rule 23(b)(3) is by ignoring the fact that, under its own analysis, reliance may be an individualized question that predominates over common questions at certification.

 Of course, the Court’s assertion that materiality will be resolved on the merits presumes that certification will not bring in terrorem settlement pressures to bear, foreclosing any materiality inquiry at all. The Court dismisses this concern, ante, at 474-477, attempting to give fraud-on-the-market analysis the imprimatur of congressional enactment instead of recognizing it as a judicially created doctrine grafted onto an implied cause of action. But the fact that Congress has enacted legislation to curb excesses in securities litigation while leaving Basic intact, see ante, at 475-476, says nothing about the proper interpretation of Basic at issue here. The Court retains discretion over the contours of Basic unless and until Congress sees fit to alter them—a fact Congress must also have realized when it passed the Private Securities Litigation Reform Act of 1995, 109 Stat. 737, and other legislation. The Court’s entire argument is based on the assumption that the fraud-on-the-market presumption need not be shown at certification because it will be proved later on the merits; insofar *496 as certification makes that later determination unlikely to occur, it at least counsels against the certitude with which the Court assures us that its gloss on Basic is correct.

 Ampex’s sales for 1971 were just under $284 million. See Reckert, A. & P. Registers Deficit for First Fiscal Quarter, N. Y. Times, July 1, 1972, p. 27 (discussing Ampex’s revenue and net loss in its 1972 annual report).

 Blackie’s use of materiality to satisfy reliance for purposes of Rule 23(b)(3) predominance continued to form the foundation for the fraud-on-the-market concept in subsequent pre-Basic appellate cases. See, e. g., Peil v. Speiser, 806 F. 2d 1154, 1161 (CA3 1986) (“[W]e hold that plaintiffs who purchase in an open and developed market need not prove direct reliance on defendants’ misrepresentations, but can satisfy their burden of proof on the element of causation by showing that the defendants made material misrepresentations” (footnote omitted)); Panzirer v. Wolf, 663 F. 2d 365, 368 (CA2 1981) (“Blackie held that the materiality of a fraud creates a presumption of reliance through its presumed effect on the market. ... Our holding is no more than an extension of Blackie").