JILL PRYOR, Circuit Judge,
concurring:
As explained in the majority opinion, in seeking to establish loss in a securities fraud case, the government may show that investors relied on fraudulent information through either direct or specific circumstantial evidence. Although in some cases proving loss by direct evidence may be practicable, in many cases—including this one—it simply is not. This means that in most securities fraud cases the government’s best option likely will be to establish reliance via specific circumstantial evidence.
In this case, the government failed to offer sufficiently specific circumstantial evidence to support a finding that 2,415 investors relied on the false information Mr. *1157 Stein disseminated. See United States v. Ford, 784 F.3d 1386, 1396 (11th Cir. 2015) (requiring that the district court “make a reasonable estimate of the loss” based on available information). The government only had evidence that two investors relied on Mr. Stein’s bogus press releases, and it presented little specific evidence that would permit the district court to extrapolate from that tiny two-person sample and arrive at a reasonable estimate of loss. Of course, this begs the question: At what point has the government offered sufficient evidence from which the district court may extrapolate a reasonable estimate? Is it purely a numbers game, whereby at some point the sample size of direct evidence of reliance is large enough that a district court’s inferential leap that all investors relied is reasonable? I write to explain one potential method of proving reliance that could eliminate the numbers game and the speculation that, as in this case, accompanies it.
As two of our sister circuits have recognized, in seeking to show investors relied on fraudulent information disseminated to the public, the government could borrow from civil securities fraud cases and establish the so-called “Basie presumption.” Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., 762 F.3d 1248, 1253-54 (11th Cir. 2014) (citing Basic Inc. v. Levinson, 485 U.S. 224, 245, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)); United States v. Ebbers, 458 F.3d 110, 126-27 (2d Cir. 2006) (recognizing the Basic presumption as a means for proving reliance for purposes of loss calculation under U.S.S.G. § 2B1.1); see also United States v. Peppel, 707 F.3d 627, 646 (6th Cir. 2013) (same). “Under the Basic presumption, plaintiffs may benefit from a rebuttable presumption of class-wide reliance ‘based on what is known as the fraud-on-the-market theory.’” Local 703, 762 F.3d at 1254 (quoting Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 811, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011)). “Fraud-on-the-market claims derive from the so-called efficient market hypothesis, which provides, in the words of the Supreme Court, that ‘in an open and developed securities market, the price of a company’s stock is determined by the available material information regarding the company and its business.’” FindWhat Inv’r Grp. v. FindWhat.com, 658 F.3d 1282, 1309-10 (11th Cir. 2011) (quoting Basic Inc., 485 U.S. at 241, 108 S.Ct. 978).
“If a market is generally efficient in incorporating publiely available information into a security’s market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security’s price.” Amgen, Inc. v. Conn. Ret. Plans and Trust Funds, — U.S. -, 133 S.Ct. 1184, 1192, 185 L.Ed.2d 308 (2013). It is also reasonable to presume “that most investors ... will rely on the security’s market price as an unbiased assessment of the security’s value in light of all public information.” Id. Thus, if the Basic presumption applies, the plaintiff may, subject to evidence in rebuttal, show reliance on a classwide basis without resorting to individualized evidence.
To trigger the Basic presumption, the plaintiff generally must prove that (1) “the alleged misrepresentations were publicly known,” (2) “the stock traded in an efficient market,” and (3) “the relevant transaction took place between the time the misrepresentations were made and the time the truth was revealed.” Local 703, 762 F.3d at 1254 (internal quotation marks omitted); see also Amgen, Inc., 133 S.Ct. at 1192-93; FindWhat Inv’r Grp., 658 F.3d at 1310. Of these three elements, the second factor, known as informational efficiency, requires more explanation.
*1158 Informational efficiency refers to “a prediction or implication about the speed with which prices respond to information.” In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 14 (1st Cir. 2005). “Determining whether a market is informationally efficient, therefore, involves analysis of the structure of the market and the speed with which all publicly available information is impounded in price.” Id. This determination is “fact-intensive” and demands flexibility. Local 703, 762 F.3d at 1254. Therefore, courts have not dictated “a comprehensive analytical framework for determining whether the market for a particular stock is efficient,” and instead have recognized “general characteristics of an efficient market” including “high-volume trading activity facilitated by people who analyze information about the stock or who make trades based upon that information.” Id. at 1254-55; see, e.g., In re Scientific-Atlanta, Inc. Sec. Litig., 571 F.Supp.2d 1315, 1339-40 (N.D. Ga. 2007) (holding that the plaintiffs in a putative class action proved an efficient market sufficiently to trigger the Basic presumption of reliance and support a finding of predominance for class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure).
The Second and Sixth Circuits have recognized that in appropriate cases the government may employ the Basic presumption to establish actual loss under U.S.S.G. § 2Bl.l(b) or the MVRA. See Ebbers, 458 F.3d at 126-27 (recognizing that reliance can be shown for loss calculation purposes under § 2B1.1 by offering evidence to demonstrate “express reliance on the accuracy of the [fraudulent] financial statements,” or “reliance on what Basic, Inc. v. Levinson described as the ‘integrity' of the existing market price”); Peppel, 707 F.3d at 646 (adopting the reasoning of Ebbers). I find their reasoning persuasive. In my view, as in Peppel, if the government chooses to arrive at a loss amount attributable to the defendant based on the Basic presumption, it must offer evidence sufficient to establish each of the presumption’s three elements, described above. See Peppel, 707 F.3d at 632-33, 646 (describing the government’s evidence regarding the Basic presumption elements and holding that the evidence supported the district court’s loss calculation). Once the government establishes these elements, the defendant may challenge them with evidence of his own. See Basic, Inc., 485 U.S. at 248-49, 108 S.Ct. 978. The defendant also may try to rebut the presumption with, for example, evidence that individual investors would have purchased the stock despite knowing the statements were false. See id.
There surely will be cases in which it is impracticable or otherwise inappropriate to employ the Basic presumption as a method for demonstrating reliance. If, for example, a defendant’s fraud affected investors in an inefficient market, the Basic presumption will be of no use to the government or the district court. I do not mean to suggest that the government may never establish reliance by offering other types of specific circumstantial evidence (perhaps expert testimony) or, alternatively, a combination of direct evidence of some investors’ reliance and circumstantial evidence to show that other investors were similarly situated. I simply offer my view that in appropriate cases the Basic presumption may be a feasible method for establishing reliance by specific and reliable circumstantial evidence.