**PENNMONT SECURITIES, and its partners, Appellant,**

**v.**

**Meyer FRUCHER; Philadelphia Stock Exchange; Philadelphia Stock Exchange Board Of Governors, John Does 1–12; National Securities Clearing Corporation.**

**No. 08–1476.**

United States Court of Appeals, Third Circuit.

Argued March 12, 2009.

Filed: Aug. 17, 2009.

Lynanne B. Wescott, [ARGUED], the Wescott Law Firm P.C., Philadelphia, PA, Counsel for Appellant.

---

Stephen J. Kastenberg, [ARGUED], Edward D. Rogers, Paul Lantieri III, Ballard Spahr Andrews & Intersoll, LLP, Philadelphia, PA, Counsel for Appellees.

Before: FUENTES, CHAGARES, and TASHIMA,* Circuit Judges.

FUENTES, Circuit Judge.

This case concerns a dispute between the Philadelphia Stock Exchange ("the Exchange") and PennMont Securities ("PennMont"), a member of the Exchange. PennMont appeals an Order and Opinion of the District Court, dismissing PennMont's motion for a temporary restraining order ("TRO") and a preliminary injunction on grounds of absolute immunity, and dismissing the entire case for failure to state a claim upon which relief could be granted. For the reasons that follow, we conclude that the District Court was without subject matter jurisdiction to consider any aspect of PennMont's case because of PennMont's failure to exhaust its administrative remedies. Accordingly, we vacate the Order and Opinion of the District Court and remand this case with instructions to dismiss.

I.

The Philadelphia Stock Exchange is a registered national securities exchange. As a registered exchange, it is deemed a self-regulatory organization by the Securities Exchange Act of 1934 ("Exchange Act"). *See* 15 U.S.C. § 78c(a)(26). Like all similar entities, the Exchange "has a duty to promulgate and enforce rules governing the conduct of its members." *See Barbara v. N.Y. Stock Exch., Inc.,* 99 F.3d 49, 51 (2d Cir.1996).

In 1998, the Exchange entered into negotiations to sell its assets to the American Stock Exchange ("AMEX"). This sale would have generated more than $100 million for the Exchange, but also would have divested Exchange members of certain governance and equity trading privileges. *PennMont Sec. v. Frucher,* 534 F.Supp.2d 538, 539 (E.D.Pa.2008). PennMont, a member of the Exchange, vehemently objected to the sale, arguing that it would have drastically devalued PennMont's ownership stake in the Exchange. PennMont subsequently brought an action against the Exchange, seeking to enjoin the sale. Although the trial court denied PennMont's injunction, the sale to AMEX fell through while the case was pending.

Several years later, the Exchange's leadership again earned the ire of PennMont. In 2003, the Exchange attempted to alter its corporate structure by converting the Exchange from a non-stock company, with ownership interest measured by seats on the Exchange, to a stock corporation, with ownership interests measured by shares. As with the proposed sale to AMEX, this planned restructuring would have diminished the value of PennMont's ownership stake in the Exchange. PennMont amended its complaint in the previous action to challenge this "demutualization." Again, the trial court denied the injunction. The Appellees subsequently moved for summary judgment, which was ultimately granted by the trial court.

In August 2004, shortly before the trial court ruled on the summary judgment motion, the Exchange passed a fee-shifting provision pursuant to its rule-making authority. The provision in question—Rule 651—states that

---

* Honorable A. Wallace Tashima, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

[a]ny member, member organization, foreign currency options participant, foreign currency options participant organization, or person associated with any of the foregoing who fails to prevail in a lawsuit or other legal proceeding instituted by such person or entity against [the Exchange] or any of its board members, officers, committee members, employees, or agents, and related to the business of [the Exchange], shall pay to [the Exchange] all reasonable expenses, including attorneys' fees, incurred by [the Exchange] in the defense of such proceeding, but only in the event that such expenses exceed $50,000. This provision shall not apply to disciplinary actions by [the Exchange], to administrative appeals of [the Exchange] actions or in any specific instances where the Board has granted a waiver of this provision.

Self–Regulatory Organizations; Philadelphia Stock Exchange, Inc.; Notice of Filing and Immediate Effectiveness of Proposed Rule Change Relating to Legal Fees Incurred by the Exchange, S.E.C. Rel. No. 34–50159, 2004 WL 2049378, at *1 (Aug. 5, 2004). This rule, in sum, would require a member of the Exchange to reimburse the Exchange for its legal fees if the member failed to prevail in a lawsuit it initiated against the Exchange, and the Exchange spent more than $50,000 defending itself.

Approximately one month after the Exchange instituted Rule 651, the Exchange won its summary judgment motion against PennMont. The decision was affirmed by the Pennsylvania Superior Court in 2006.

In November 2007, more than a year and a half after the Superior Court affirmed the grant of summary judgment, the Exchange invoked Rule 651 and billed PennMont $925,612 for legal fees incurred in defending the lawsuit. This bill included fees incurred well prior to passage of Rule 651. The Exchange stated that it would debit the amount from PennMont's clearing account if PennMont refused to pay.[1] PennMont objected to the invoice and then moved for a TRO and preliminary injunction enjoining the collection of attorneys' fees.

While the District Court considered PennMont's motion, the Exchange's Special Committee to Review Delinquencies and Payments ("Special Committee") reviewed PennMont's objections to the invoice. The Special Committee conducted a telephone hearing that was presided over by three Exchange board members, one of whom was a named party in the 1998 lawsuit. PennMont did not participate in this hearing.[2] Approximately two weeks after the hearing, the Special Committee issued an order and opinion upholding the imposition of attorneys' fees. The Exchange assured the District Court, however, that it would not attempt to collect the funds until the District Court ruled on PennMont's TRO and preliminary injunction.

On February 12, 2008, the District Court denied PennMont's motion for a TRO and preliminary injunction and also dismissed the case for failure to state a claim. Specifically, the District Court noted that: (1) courts have upheld fee shifting

1. Members of the Exchange keep an account with the National Securities Clearing Corporation ("NSCC") to facilitate the collection of fees owed to the Exchange.

2. PennMont and Appellees disagree as to why PennMont did not participate. PennMont argues that it was never provided with the call-in information necessary to participate in the hearing. Appellees, on the other hand, argue that PennMont was apprised of the necessary information by fax, and offer a fax confirmation sheet attesting that the relevant contact information was received by PennMont.

provisions mirroring those in Rule 651 time and time again as consistent with the Exchange Act; (2) the Securities and Exchange Commission ("SEC") declared Rule 651 "effective upon filing" and has not attempted to amend or abrogate the rule since; and (3) the Exchange's decision to apply or not apply an internal rule governing the conduct of its members constitutes an exercise of delegated regulatory power and therefore cannot serve as the basis for a private civil suit in a district court. Accordingly, the District Court held that the Exchange had absolute immunity from suit and thus PennMont could not show a likelihood of success on the merits, nor state a claim upon which relief could be granted. The District Court noted, however, that PennMont was not completely without remedies—it could appeal the Special Committee's decision to the SEC, and thereafter appeal the SEC's decision to the Court of Appeals.

## II.

### A.

We review a denial of a preliminary injunction for an "abuse of discretion, a clear error of law, or a clear mistake on the facts." *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir.1999). We review the dismissal of the complaint *de novo*. *Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir.2007). We exercise plenary review over questions of subject matter jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 626 (3d Cir.2009).

### B.

The District Court decided PennMont's case on the merits, holding that PennMont could not satisfy the requirements of a TRO/preliminary injunction, nor state a claim upon which relief could be granted, because the Exchange was absolutely im-

mune from this lawsuit. *PennMont*, 534 F.Supp.2d at 542. The District Court observed that when a self-regulatory organization takes regulatory action consistent with the goals of the Exchange Act, the self-regulatory organization is absolutely immune from private civil suits challenging the regulatory action. Finding that Rule 651 was consistent with the goals of the Exchange Act, the District Court held that the Exchange had absolute immunity from PennMont's lawsuit and thus PennMont could not show a likelihood of success on the merits. In reaching this conclusion, the District Court "assume[d]—without deciding—that jurisdiction [was] proper." *Id.* at 540–41. For the reasons that follow, we find that jurisdiction was not proper, and that the District Court should not have addressed the merits of PennMont's claims.

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). "The primary purpose of this well-established doctrine is the avoidance of premature interruption of the administrative process . . . ." *First Jersey Secs., Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir.1979) (internal citations and quotation marks omitted). "Furthermore, the principle allows the administrative agency to utilize its discretion and apply its expertise; it gives the agency the opportunity to correct its own errors; and it minimizes piecemeal appeals of agency actions." *Id.*

The Exchange Act provides a comprehensive administrative review procedure applicable to decisions rendered by self-regulatory organizations. Once a self-regulatory organization, such as the Exchange, issues a final ruling, that decision

is subject to administrative review by the SEC. 15 U.S.C. § 78s(d)(1)-(2).[3] If an aggrieved party is dissatisfied with the SEC's determination, it can obtain further review from the United States Court of Appeals for the circuit in which the aggrieved party resides. 15 U.S.C. § 78y(a)(1).[4] We have endorsed the requirement that litigants exhaust this specific administrative remedy provided by the Exchange Act, emphasizing that "it is essential that courts refrain from interfering with the process unnecessarily." *First Jersey*, 605 F.2d at 696.

PennMont did not avail itself of this administrative process. Rather, once the Exchange sought to enforce Rule 651, the fee-shifting rule, PennMont decided not to seek SEC review and went straight to the District Court to request an injunction.

Typically, when a litigant refuses to exhaust the available administrative remedies provided by the Exchange Act, a district court may not exercise jurisdiction over the case. *Id.* at 696 (observing that "the doctrine of exhaustion of administrative remedies applies with equal force to the disciplinary proceedings" of a self-regulatory organization). We have, however, laid out two "extraordinary" exceptions to the exhaustion requirement, either of which would compel a court to hear an unexhausted case: "1) when the adminis-

trative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear and unambiguous statutory or constitutional violation." *Id.* For the reasons that follow, however, PennMont cannot demonstrate the "extraordinary circumstances" necessary to satisfy either exception.

PennMont's only basis for alleging irreparable harm sufficient to satisfy the first exception relates to the threat that Rule 651, the fee-shifting rule, poses to the financial health of its business operations. In *First Jersey*, however, we noted that claims of corporate financial collapse cannot satisfy the irreparable harm exception, given that financial harm can occur in many, if not most, disciplinary hearings of securities traders. *Id.* at 697. As we previously observed, "[a]ny company threatened by [a self-regulatory organization] hearing could run into district court claiming that the imposition of sanctions would result in irreparable injury." *Id.* Without more, PennMont cannot satisfy the first exception.

Nor can PennMont demonstrate the sort of "clear and unambiguous" statutory or constitutional injury that would satisfy the second exception. As pointed out by the District Court, regulations similar to Rule 651 have been consistently approved by

---

**3.** The Exchange Act provides for SEC review when any self-regulatory organization

> imposes any final disciplinary sanction on any member thereof or participant therein, denies membership or participation to any applicant, or prohibits or limits any person in respect to access to services offered by such organization or member thereof or if any self-regulatory organization (other than a registered clearing agency) imposes any final disciplinary sanction on any person associated with a member or bars any person from becoming associated with a member
>
> . . . .

15 U.S.C. §§ 78s(d)(1)-(2).

**4.** Pursuant to the Exchange Act,

> [a] person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

15 U.S.C. § 78y(a)(1).

the SEC. *See, e.g.,* Order Granting Approval to Proposed Rule Change by the Pacific Stock Exchange, Inc., Relating to the Liability of the Exchange and its Governors, Officers and Agents, S.E.C. Release No. 37563, 62 S.E.C. Docket 1527, 1996 WL 466637 (Aug. 14, 1996) ("Pacific Stock Exchange Rule"). The Pacific Stock Exchange Rule—which contains an attorney fee provision largely identical to Rule 651—applies to "a member or associated person who fails to prevail in a lawsuit or other legal proceeding instituted by that person against the Exchange or other specified persons, and related to the business of the Exchange . . . ." *Id.* The SEC found that this rule was consistent with the Pacific Stock Exchange's mandate under the Exchange Act to craft rules "provid[ing] for the equitable allocation of reasonable dues, fees, and other charges among its members . . . ." *Id.* (citing 15 U.S.C. § 78f(b)(4)). The Commission further noted that because the obligation to pay attorneys' fees would only be triggered once the fees climb above $50,000, "the rule change should not provide an undue disincentive to litigation, in so far as it will permit the discovery needed to assess the merits of the members' cases." *Id.* Although PennMont's argument regarding the Exchange's retroactive application of Rule 651 would not be foreclosed by the SEC's prior approval of similar rules, the consistent endorsement of these rules by the SEC surely complicates PennMont's ability to demonstrate a "clear and unambiguous" violation of statutory or constitutional law.

In our view, the lawfulness of the Exchange's conduct is far from clear and unambiguous. Moreover, this is precisely the sort of question that would have benefited from administrative review: we would be far better positioned to consider the propriety of the application of Rule 651 had PennMont given the SEC the opportunity to apply its expertise to this matter in the first place. *See First Jersey,* 605 F.2d at 696 (noting that the structure of administrative review enables the SEC to "apply its expertise" and, if necessary, "correct its own errors without resort to the courts"). Accordingly, PennMont also fails to satisfy the second exception to the administrative exhaustion requirement.

### III.

Because PennMont has failed to administratively exhaust its challenge to the application of Rule 651, we dismiss this appeal for lack of subject matter jurisdiction and remand to the District Court with instructions to vacate its order and to dismiss this action for lack of subject matter jurisdiction.