**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2511
_____

I. STEPHEN RABIN, on behalf of himself
and all others similarly situated,
                                        Appellant

v.

NASDAQ OMX PHLX LLC; NASDAQ OMX GROUP, INC.;
BEDROCK TRADING LTD; BLUEFIN TRADING, LLC;
CONSOLIDATED TRADING LLC; ELM TRADING, L.P.;
FIRST DERIVATIVE TRADERS, LP; HAP TRADING, LLC;
KEYSTONE TRADING PARTNERS, LLC; LARGO TRADING, L.P.;
SUMMIT SECURITIES GROUP, LLC; SUMO CAPITAL, LLC;
SUSQUEHANNA INTERNATIONAL GROUP LLP; SIG HOLDING LLC;
TSR ASSOCIATES, LLC; V TRADER-CG, LLC; SUSQUEHANNA
SECURITIES; SUSQUEHANNA INVESTMENT GROUP
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-15-cv-00551)
District Judge: Honorable Gerald A. McHugh
_____

Argued: October 3, 2017
_____

Before: SHWARTZ and ROTH, <u>Circuit Judges</u>, and PAPPERT, <u>District Judge</u>.[*]

(Opinion filed: October 25, 2017)

_____

      [*] Honorable Gerald J. Pappert, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

Lawrence Deutsch   [ARGUED]
Phyllis M. Parker
Robin Switzenbaum
Berger & Montague
1622 Locust Street
Philadelphia, PA 19103

David J. Stone
Bragar Eagel & Squire
885 Third Avenue
Suite 3040
New York, NY 10022

     *Counsel for Appellant*


Stephen J. Kastenberg   [ARGUED]
Paul Lantieri, III
John W. Scott
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103

     *Counsel for Appellees NASDAQ OMX PHLX LLC and NASDAQ OMX Group, Inc.*

David C. Bohan   [ARGUED]
Hannah O. Koesterer
Patrick M. Smith
Peter G. Wislon
Katten Muchin Rosenman
525 West Monroe Street
Suite 1600
Chicago, IL 60661

     *Counsel for Appellees Bedrock Trading Ltd., First Derivative Traders, L.P., and Largo Trading, L.P.*

Kenton E. Knickmeyer   [ARUGED]
Felicia R. Williams
Thompson Coburn
One U.S. Bank Plaza
St. Louis, MO 63101

    *Counsel for Appellee Bluefin Trading LLC*


William A. Harvey
Paige M. Willan
Klehr Harrison Harvey Branzburg
1835 Market Street
Suite 1400
Philadelphia, PA 19103

Harry P. Lamberson  [ARGUED]
1024 North Western Avenue
Lake Forest, IL 60045

    *Counsel for Appellee Consolidated Trading LLC*


Sidney S. Liebesman
Carrie S. Love
Richard L. Scheff  [ARGUED]
Michael C. Witsch
Montgomery McCracken Walker & Rhoads
123 South Broad Street
28th Floor
Philadelphia, PA 19109

    *Counsel for Appellees ELM Trading, L.P. and TSR Associates, LLC*


Steven B. Mirow   [ARGUED]
249 South 12th Street
Philadelphia, PA 19107

    *Counsel for Appellee Keystone Trading Partners, LLC*

Michael D. LiPuma
Lisa B. Wershaw
Law Office of Michael LiPuma
325 Chestnut Street
Suite 1109
Philadelphia, PA 19106

Kyle D. Rettberg
Phillip L. Stern     [ARGUED]
Neal Gerber & Eisenberg
Two North LaSalle Street
Suite 1700
Chicago, IL 60602

*Counsel for Appellees SIG Holding, Susquehanna International Group LLP, Susquehanna Investment Group, Susquehanna Securities, and V Trader-CG LLC*

_____

OPINION[**]

_____

SHWARTZ, <u>Circuit Judge</u>.

Plaintiff I. Stephen Rabin appeals the District Court's order granting Defendants' motion to dismiss his putative class action complaint alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a <u>et seq.</u> (the "Exchange Act"), and the Securities and Exchange Commission's Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a), (c). He asserts that defendants NASDAQ OMS PHLX, LLC and NASDAQ OMX Group, Inc. (the "Exchange Defendants") and Bedrock Trading Ltd., Bluefin Trading,

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

LLC, Consolidated Trading LLC, ELM Trading, L.P., First Derivative Traders, L.P., Keystone Trading Partners, LLC, Largo Trading, L.P., SIG Holding LLC, Susquehanna International Group, LLP, Susquehanna Investment Group, Susquehanna Securities, TSR Associates, LLC, and V Trader-CG, LLC (the "Member Defendants") (collectively, the "Defendants") manipulated the options market by engaging in a trading strategy to capture stock dividends that could have been paid to other market participants like Rabin. Because Rabin failed to allege any actual or presumed reliance, we will affirm.

I

A[1]

This case concerns an options trading strategy undertaken on the Philadelphia Stock Exchange, NASDAQ OMX PHLX ("PHLX"),[2] known as a "dividend play." Self-Regulatory Organizations—OCC Notice of Filing, Exchange Act Release No. 34-72677, 79 Fed. Reg. 44480, 44480, 44481 (July 25, 2014); Keystone Supp. App. at 39. The strategy involved Member Defendants' buying and selling stock options the day before the ex-dividend date for a particular security. Id. The ex-dividend date is the last trading day by which an option to buy stock must be exercised in order for the buyer to obtain the

---

[1] Because we are reviewing an order granting a Rule 12(b)(6) motion to dismiss, we draw the facts from the allegations in Rabin's corrected second amended complaint, which we accept as true. Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 165 (3d Cir. 2016).

[2] NASDAQ OMX PHLX, LLC owns and operates PHLX. The NASDAQ OMX Group, Inc. is the parent company of NASDAQ OMX PHLX, LLC. NASDAQ OMX PHLX, LLC is a registered "self-regulatory organization" ("SRO") pursuant to the Exchange Act, 15 U.S.C. § 78c(a)(26); PennMont Sec. v. Frucher, 586 F.3d 242, 243 (3d Cir. 2009).

dividend.  As "Market Makers,"[3] Member Defendants are allowed to maintain long (buy-side) and short (sell-side) positions on the same underlying security, meaning that they could be in a position to buy and sell the same security and thereby hedge their short positions perfectly with their long positions.  Rabin alleges that market participants like him generally are not permitted to simultaneously have long and short offsetting positions on the same security.

In addition to having hedged positions, Member Defendants sought to increase the open interest (the number of unexercised options) and exercise all their long options to increase the chances that the Options Clearing Corporation (the "OCC")—the intermediary for all options transactions—would not assign Member Defendants as writers, or sellers, on the day before the ex-dividend date.  Through this strategy, they captured dividends on the shares that would have had to be delivered but for the option holders' failure to exercise their options.

The sequence in which the OCC processed options transactions during the relevant period enabled Member Defendants to execute dividend plays.  The OCC processed

---

[3] A Market Maker is

a dealer who, with respect to a particular security, (i) regularly publishes bona fide, competitive bid and offer quotations in a recognized interdealer quotation system, or (ii) furnishes bona fide competitive bid and offer quotations on request; and, (iii) is ready, willing and able to effect transactions in reasonable quantities at his quoted prices with other brokers or dealers.

17 C.F.R. § 240.15c3-1(c)(8).

Market Makers' long positions (options to buy) before it processed their short positions (options on which they were obligated to deliver securities, if the option is exercised). This meant that Member Defendants could obtain the underlying stock from their long positions in time to receive dividends and have enough stock to cover their short positions.[4]

PHLX charged fees for options trading activity and provided rebates that in effect capped the fees Member Defendants paid on their options trades. This fee cap made it financially feasible for Member Defendants to conduct the high-volume trading required for dividend plays, see Self-Regulatory Organizations—NASDAQ OMX PHLX LLC, Release No. 34-75438, 111 SEC Docket 5189, 2015 WL 4191592, at *1-4 (July 13, 2015); Self-Regulatory Organizations—Notice of Filing, Release No. 34-48983, 68 Fed. Reg. 75703, 75703-04 (Dec. 23, 2003), and made PHLX an attractive exchange for options trading, see Self-Regulatory Organizations—Philadelphia Stock Exchange, Inc., Release No. 34-65174, 71 Fed. Reg. 42156, 42157 (July 19, 2006); Self-Regulatory Organizations—Notice of Filing, Release No. 34-48983, 68 Fed. Reg. at 75703-04.

B

Rabin filed a putative class action complaint against Defendants alleging manipulation in violation of Section 10(b) and Rule 10b-5(a) and (c).[5] He claims that

---

[4] In 2014, the OCC curtailed the practice of dividend plays, including on PHLX, by changing the sequence in which it processed sales and exercises. Self-Regulatory Organizations—OCC Order Approving Rule Change, Release No. 34-73438, 79 Fed. Reg. 64843, 64843-46 (Oct. 27, 2014).

[5] Rabin also brought an unjust enrichment claim under Pennsylvania state law, which the District Court dismissed and which he is no longer pursuing.

Defendants conspired to manipulate the PHLX options market by undertaking the dividend play trading strategy on PHLX—to "dramatically increase[ ] the size of the short call option pool the day before underlying securities went ex-dividend"—and thereby capture a disproportionate amount of dividends and deprive market participants like Rabin of dividends. Compl., ECF No. 105 ¶ 74.

After Rabin amended his complaint twice, Defendants filed motions to dismiss. See Rabin v. NASDAQ OMX PHLX LLC, 182 F. Supp. 3d 220 (E.D. Pa. 2016). The District Court granted the motions and ruled, among other things, that SRO immunity precluded Rabin's claim against Exchange Defendants, id. at 239-40, and that Rabin failed to state a claim against Member Defendants for manipulation because he (1) did not allege that they injected false information into the market or created a false impression of supply and demand, (2) did not allege actual reliance and was not entitled to a presumption of reliance on the basis that he relied on an efficient market free of manipulation, and (3) did not sufficiently allege scienter, id. at 244-47. Rabin appeals.

## II[6]

### A

We exercise plenary review of a district court's order granting a motion to dismiss under Rule 12(b)(6), Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011),

---

[6] The District Court properly exercised jurisdiction pursuant to 15 U.S.C. § 78aa(a) and 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Contrary to Keystone's argument, § 25 of the Exchange Act, 15 U.S.C. § 78y, does not deprive this Court (or the District Court) of subject matter jurisdiction because the exhaustion requirement set forth in § 25 is not triggered by the § 10(b) claim and relief sought in this case.

and apply the same standard as the district court, see Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014). Under this standard, we must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). Because a claim for manipulation sounds in fraud, a plaintiff must plead it with particularity under Federal Rule of Civil Procedure 9(b). ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 101 (2d Cir. 2007). The particularity requirement is "rigorously applied in securities fraud cases." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997).

B

Rabin argues that the District Court erred in dismissing his complaint because he has adequately pleaded a claim for manipulation under Section 10(b) and Rule 10b-5(a) and (c). Defendants argue, among other things, that Rabin's claim is time-barred and he has failed to state a plausible manipulation claim because he has not adequately alleged actual or intended price artificiality, reliance, or scienter, and failed to plead his claim with particularity. Exchange Defendants also argue that they are immune. We need not decide whether Exchange Defendants are immune or whether any claims are time-barred because Rabin's pleading is incurably deficient.

Section 10(b) makes it unlawful

9

[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 proscribes, in relevant part, "employ[ing] any device, scheme, or artifice to defraud" as well as "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 U.S.C. § 240.10b-5(a), (c). To state a claim for manipulation under these provisions, a plaintiff must show:

(1) in connection with the purchase or sale of a security;
(2) the defendant(s) engaged in deceptive or manipulative conduct by injecting inaccurate information into the marketplace or creating a false impression of supply and demand for the security;[7]
(3) for the purpose of artificially depressing or inflating the price of the security;
(4) the defendant acted with scienter;
(5) the plaintiff reasonably relied, actually or presumptively, on the defendant's conduct or the artificial price;
(6) the plaintiff suffered economic loss; and
(7) loss causation—a causal connection between the plaintiff's reliance and the loss.

See McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007); GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 207 (3d Cir. 2001); Jones v. Intelli-Check, Inc., 274 F. Supp. 2d 615, 627-28 (D.N.J. 2003); see also Erica P. John Fund, Inc. v. Halliburton

---

[7] The term "manipulation" "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476 (1977); see also Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976) (stating that "manipulation . . . connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities").

Co., 563 U.S. 804, 812-13 (2011) (discussing presumptive reliance); Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008) (discussing reliance on the defendant's deceptive acts as a requirement).

Rabin's pleading is deficient in several ways. Among other things, he fails to adequately allege reliance. Rabin does not assert that he actually relied on any artificial price or even an action of a defendant, but rather asserts that he "and other members of the Class were damaged by relying on an assumption of an honest and fair market, free of manipulation, when buying and selling options in the marketplace." Compl., ECF No. 105 ¶ 98. He argues that he "is not seeking a general presumption that markets are fair," but "instead relies on the theory that the OCC depends upon a fair and non-manipulated open interest pool for its random assignment of exercise notices." Appellant's Br. at 35. He also argues that a presumption of reliance under Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972), applies because "Defendants breached their duty to properly conduct their trades to foster an honest market, [and] did not disclose their conduct." Appellant's Br. at 39.

The reliance element of a Section 10(b) claim requires a showing that the plaintiff relied on a defendant's conduct and was injured as a result, despite exercising reasonable diligence. AES Corp. v. Dow Chem. Co., 325 F.3d 174, 178 (3d Cir. 2003). Because direct proof of such reliance is frequently unavailable, courts have recognized presumptions of reliance to allow plaintiffs to assert claims under Section 10(b). As this Court has acknowledged Malack v. BDO Seidman, LLP, 617 F.3d 743, 747 (3d Cir. 2010), the Supreme Court has recognized two theories of reliance only: (1) the Affiliated

Ute presumption, premised on a defendant-fiduciary's failure to disclose material facts he had an affirmative duty to disclose, see Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153 (1972); and (2) the fraud-on-the-market presumption, premised on the idea that an efficient stock market absorbs all information—including misinformation—about a company, thereby rendering unnecessary a showing of direct reliance on a specific misrepresentation or omission, see Basic Inc. v. Levinson, 485 U.S. 224, 241-42 (1988). Neither presumption applies here.

Even assuming Rabin did not waive an argument based upon Affiliated Ute,[8] reliance may not be presumed under this theory.[9] Rabin has not provided a legal basis upon which to conclude that Member Defendants owed him a duty to disclose their trading strategy. See Stoneridge Inv. Partners, 552 U.S. at 159 (concluding that the Affiliated Ute presumption did not apply because "[r]espondents had no duty to disclose"). Rather, Rabin simply states that those engaged in manipulation have a duty to disclose such conduct to other market participants. Oral Arg. Recording at 10:48-12:20, available at http://www2.ca3.uscourts.gov/oralargument/audio/16-

---

[8] Defendants argue that Rabin waived this argument because he raised it only by making a "passing reference" to Affiliated Ute during oral argument before the District Court. Member Defendants' Br. at 37. None of Rabin's briefs in opposition to the Member Defendants' motions to dismiss mentioned the Affiliated Ute presumption in name or substance. The only mention of Affiliated Ute was a fleeting afterthought during oral argument, when, after prodding by the District Court, Rabin's counsel made only an oblique reference to "an alternative basis for reliance . . . which follows the line of cases Affiliated [Ute] [sic]." App. 92, 73:19-25.

[9] Judge Roth does not agree that the Affiliated Ute presumption would not apply here if it had been properly pled but believes the argument has been waived and therefore, she joins in the judgment.

2511Rabinv.NASDAQ.mp3. As our sister circuit court of appeals has observed, if nondisclosure of manipulation itself justified a presumption under Affiliated Ute, then "every manipulative conduct case would become an omissions case." Desai v. Deutsche Bank Sec. Ltd., 573 F.3d 931, 941 (9th Cir. 2009). This would expand the reach of the securities laws beyond their intended boundaries and read out from a § 10(b) manipulation claim what the Supreme Court has described as "manipulative" activity, which requires intentional conduct designed to defraud or deceive investors by artificially affecting a security's price, Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976), or activity that stimulates the market in a way that does not reflect investor demand, Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476 (1977). Since the pleading does not allege fraudulent or deceptive conduct and the activity alleged did not give a misimpression concerning investor demand, Rabin cannot rely on Affiliated Ute's presumption.

The "fraud-on-the market" theory also does not apply. As stated previously, this theory allows "reliance [to] be presumed when a fraudulent misrepresentation or omission impairs the value of a security traded in an efficient market." Malack, 617 F.3d at 747 (alteration omitted) (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 175 (3d Cir. 2001)). This presumption is based on the hypothesis that the price of a stock "in an open and developed securities market . . . is determined by the available material information regarding the company and its business." Basic, 485 U.S. at 241. Thus, the presumption is usually available only if there are material omissions or misrepresentations concerning an actively traded security. Desai, 573 F.3d at 940 (citation omitted).

13

Recognizing that the fraud-on-the-market theory is not applicable, Rabin offers a different theory of reliance based upon the premise that the OCC, and by extension other market participants, rely on a fair and nonmanipulated market. In Malack, we rejected a similar theory, known as the "fraud-created-the-market" theory, which posits that "the securities laws allow an investor to rely on the integrity of the market to the extent that the securities it offers to him for purchase are entitled to be in the market place." Id. (alteration omitted) (quoting Shores v. Sklar, 647 F.2d 462, 464 (5th Cir. 1981) (en banc)). In doing so, we reasoned that

> [p]romoting honesty and fair dealings is certainly an important concern, but it is also an exceedingly abstract concern. If we were guided mainly by the promotion of free and honest securities markets, then we would seek to expand § 10(b) liability whenever possible to prevent fraud. . . . The securities laws are not a catchall for any fraudulent activity committed in connection with a securities offering.

Id. at 753. We reached our conclusion based upon Supreme Court precedent, observing that the Court has "cast doubt on the legitimacy of expansively presuming reliance to promote honesty and fair dealings," as reflected in its ruling that "§ 10(b) liability did not extend to aiders and abettors." Id. at 754 (quoting Stoneridge, 552 U.S. at 157). We also heeded the Supreme Court's "instruction" that the private right of action under § 10(b) "should not be extended beyond its present boundaries," id. (quoting Stoneridge, 552 U.S. at 165), and noted that this instruction "support[s] . . . rejecting . . . new presumptions of reliance," id.[10]

---

[10] Malack also observed that the fraud-created-the-market theory, which, as stated, is predicated on a view that participants rely on an honest market (which is identical to

Here, there is no allegation that the items bought and sold were not entitled to be on the market, but <u>Malack</u>'s reasoning and concerns still apply and foreclose Rabin's theory of reliance. He asserts that he and other class members relied on an honest, manipulation-free options market, and further that the OCC depends on a manipulation-free open interest pool. In essence, he is asserting reliance based on the assumed integrity of the market, which <u>Malack</u> holds does not provide a basis to presume reliance, <u>id.</u> at 747, 753. Because Rabin did not allege actual reliance and is not entitled to a presumption of reliance, he did not allege the element of reasonable reliance, and his manipulation claim thus fails.[11,12] The District Court therefore correctly dismissed his complaint.

## III

For the foregoing reasons, we will affirm.[13]

---

Rabin's theory), "essentially eliminat[es]" § 10(b)'s reliance requirement. 617 F.3d at 755.

[11] Because we decide this appeal based on the insufficiency of Rabin's pleading, we need not address any other argument, including Bluefin's argument that Rabin lacks standing, or Keystone's arguments that § 23(a)(1) of the Exchange Act, 15 U.S.C. § 78w(a)(1), is a bar to Rabin's claim insofar as it implicates PHLX and OCC rules.

[12] Judge Roth believes that this case does not fit neatly within the <u>Malack</u> paradigm. Rabin does not argue that the options transacted on the exchange were marketed illegally and tainted by fraud in such a way that they should not have been transacted at all. Rather, he argues that he expected a market "free of manipulation" and relied on the Member Defendants to honor their obligation to preserve "a fair and orderly market," as dictated by Philadelphia Stock Exchange Rule 1014, and not to manipulate the option open interest pool for their own benefit. Judge Roth, however, believes that Rabin did not make such an argument in a timely manner.

[13] We will also deny Keystone's motion to dismiss the appeal based on immunity and lack of subject matter jurisdiction because our ruling does not depend on any alleged violation of the rules or the rules' validity.